First case on our call this morning is agenda number 11, case number 106494, People of the State of Illinois v. Brent Marker. Counsel, you may proceed. May it please the Court, Counsel, my name is Ritha Stotz. I'm with the Office of the Illinois Attorney General, and I represent the people of the State of Illinois. This case is about the deadline for filing a notice of appeal from an interlocutory order in a criminal case. In this case, the Second District held that the State's notice of appeal from a suppression ruling was untimely. I think you're going to have to speak up a little bit. The Second District held that the State's notice of appeal from a suppression ruling was untimely, even though it was filed within 30 days of the trial court's order denying reconsideration of that ruling. That decision was wrong for two reasons. First, because the State's notice was timely with respect to the suppression ruling under the tolling provision in Rule 606, and second, because the State's notice was timely with respect to the trial court's order denying reconsideration, which was itself an independently appealable order under Rule 604. Beginning with the tolling question, the Second District held that the tolling provision in Rule 606 does not apply to interlocutory appeals. That ruling was wrong for three reasons. First, it contradicts the plain language of the rule. Second, it conflicts with nearly 30 years of appellate court interpretation of the rule. And finally, it leads to absurd results. Starting with the plain language of the rule, the first sentence of Rule 606 says that the time for appeal does not begin to run until the trial court disposes of any motion directed against the judgment. The Second District held that that tolling provision does not apply. Is the order here an interlocutory order? Yes, it was interlocutory. It didn't dispose of the entire controversy between the parties. Well, doesn't Rule 606B seem to speak to motions to reconsider only in the context of a final judgment? Well, the first part of that sentence talks about final judgments, but what the tolling provision says is that the time to appeal doesn't run until the court disposes of a motion directed against the judgment. The second sentence of the rule makes clear that that phrase, motion directed against the judgment, is not limited to final judgments. The second sentence goes on to speak to two specific types of motions that can be directed against a judgment, a post-trial motion and a post-sentencing motion. A post-trial motion is always going to be directed against something other than a final judgment because in a criminal case there is no final judgment until the sentence is imposed. So the fact that the rule goes on in the next sentence to list a post-trial motion as a type of motion directed against the judgment makes it clear that that category encompasses more than just motions directed against final orders and in fact includes appeals from suppression orders as in this case. So this court doesn't need to go any farther than those first two sentences of the rule to decide the tolling question, but there are other parts of the rules that confirm that that interpretation is correct. First, there's the definition of the term judgment in Rule 2. Rule 2 doesn't limit a judgment to a final order. It gives it a broader definition and encompasses any determination, decision, order, decree or portion thereof. In addition, there's the fact that the tolling provision doesn't use specific terms like final judgment or post-judgment motion which would specifically limit it to appeals from final orders. Even though those terms are used elsewhere in 606, the tolling provision doesn't use those. Finally- Are you making an argument, counsel, that if we find the word judgment to be ambiguous that under 2B2 it lists order as well? Is that part of your argument or are you just saying the plain reading defines judgment in the text of 606? It's clear from the text, yes, that it encompasses more than just final judgments, but to the extent the rule uses a term that's defined elsewhere in the rules, that definition applies throughout the rules. That's what Rule 2 says. So it's our position that no, the rule is not ambiguous because it's capable of only one reasonable interpretation, in part because any other interpretation would lead to absurd results. There's also a comparison with Rule 307, which is the rule governing interlocutory appeals in civil cases. That rule does specifically preclude tolling, but it does so by using very specific language. That rule says that the time for appeal runs 30 days from the entry of the interlocutory order. Rule 606 doesn't use that specific language. In addition to the plain language, there is 30 years of case law from the appellate court that confirms that the tolling rule does apply to interlocutory orders. The line of cases dating back to 1977, the appellate court has consistently interpreted the tolling rule to apply to interlocutory appeals. Those are the cases of Stokes, Rimmer, Van Mantra, Burks, and Smith. Those cases can't be ignored. They are important for three reasons. First, they show that this court acquiesced in the appellate court's consistent interpretation of the tolling rule as applying to interlocutory appeals. The rule was amended five times since Stokes came down in 1977, which is the first case in the line, but the tolling provision of the rule was never modified. Also, the cases are proof that the rule has been functioning well for 30 years. It's completely workable. Finally, the cases are evidence that the tolling rule is so well established that Illinois practitioners have come to rely on it. In an area that is as important and as complicated as appellate jurisdiction, that reliance interest is critically important. In addition to the plain language in the case law, there is the fact that interpreting the rule to prevent tolling would lead to absurd results. The well-established rule in Illinois is that the state can seek both trial court reconsideration and appellate review of a suppression ruling. Reconsideration is beneficial because it promotes judicial efficiency. By allowing errors to be corrected at the trial court level, reconsideration has the potential to eliminate some appeals. State appeals of suppression rulings are not just beneficial, they are absolutely necessary for the reasons this court articulated in Young. State appeals ensure that the development of the law is not distorted, which would happen if only the defendant could appeal a suppression ruling. State appeals give necessary guidance to the trial courts who must rule on suppression issues and to the police who must apply the rules. And state appeals ensure that the erroneous suppression of evidence does not unduly hinder the state's case at trial and thereby undermine the truth-finding function of the trial. The absence of a tolling rule will lead to the absurd result of forcing the state to choose between reconsideration and appeal. If the motion for reconsideration is not ruled on within the appeal deadline and the state decides to appeal anyway, any opportunity to correct the error at the trial court level and any resulting efficiency would be lost. Once the state files a notice of appeal, the trial court is divested of jurisdiction and it can no longer reconsider its ruling. If the state decides to wait for reconsideration and allows the appeal deadline to pass, the result could be even worse. If the trial court does not ultimately correct the original error, the state will have missed any opportunity to appeal and the state's case will be hindered at trial for no legitimate reason because, again, the suppression ruling would be incorrect. So the tolling rule is necessary to allow both the reconsideration process and the appellate review process to function as they were intended. I kind of wonder about really the need for reconsideration in criminal prosecution. When a judge usually grants a motion to quash, that's what's done here, they probably will not turn that around on a motion for reconsideration. And while this motion is pending, the defendant is still sitting in jail, cannot come out on bond. So from a practical standpoint, it just seems that it's not meant to apply in criminal proceeding. Well, I think the cases suggest that at least 30 years of practice is that it does apply. Trial courts do frequently entertain these motions and sometimes they change their minds. The reconsideration process is particularly helpful in a suppression case because a lot of times, as in this case, the issues won't really be developed until the evidentiary hearing. As in this case, the defendant filed a somewhat boilerplate motion, didn't get into a lot of the details, didn't even specify what evidence they wanted suppressed. And the facts and the reasoning didn't become clear until the evidentiary hearing. So any opportunity to flesh out those legal issues would happen on reconsideration. And to the extent that reconsideration can help ensure the accuracy of the ruling, it should be encouraged. Of course, the process is up to the individual trial judge, but if the trial judge wants to entertain a motion for reconsideration, they should be able to do anything that would help ensure the accuracy of the ruling, whether it's allowing more oral arguments, as the court did in this case, allowing briefing, doing its own research, maybe ordering that a transcript of the evidentiary hearing could be prepared so that it would be clear exactly what the evidence was. So reconsideration can be potentially very helpful. And regarding the fact that the defendant could be in pretrial custody, that consideration is taken care of by the Speedy Trial Act. If the state seeks reconsideration and that causes additional pretrial delay to which the defendant does not agree, that time counts against the state on the Speedy Trial Act. So any delay puts the defendant that much closer to a discharge from custody under the act and has the potential to result in the dismissal of charges. So in that respect, it's no different than any other pretrial delay. So because of the plain language and the case law and the fact that not allowing for tolling would lead to absurd results, the second district's ruling on the tolling question was incorrect and the state's notice was timely with respect to the original suppression ruling. In addition, the state's notice was also timely with respect to the order denying reconsideration, which was itself independently appealable under 604. The way the court handled the state's request for reconsideration in this case makes it clear that the court didn't simply reject the state's request outright. Instead, the court scheduled a hearing on the motion, allowed the parties to present oral arguments, made additional factual findings. Specifically, it specifically found that Officer Vargas had testified that he smelled a strong odor of alcohol and the court also offered some additional analysis on the probable cause issue. So the mere fact that the court reached the same conclusion after re-evaluating its ruling as it did the first time doesn't mean that the second order didn't also have the effect of suppressing evidence. The comments the court made at reconsideration to the effect of if the arrest is bad, everything after it is bad, those comments make clear that the court did intend its ruling on reconsideration to have the effect of keeping certain evidence away from the fact finder at trial. That's all that's needed to bring that ruling within the broad scope of Rule 604. Because the state's notice was filed within 30 days of that ruling, the state's notice was timely with respect to the trial court's second order as well as its first order. So for all of these reasons, this court should reverse the judgment of the appellate court and hold that the tolling rule in 606 does apply to interlocutory appeals. May it please the court. My name is Larry Wechter, representing Brent Marker. May I first say that it's a privilege and it's exciting to be here on this historic day in front of you in the hometown of Abraham Lincoln. The issue, of course, is correctly stated by the prosecution. Can a motion to reconsider an interlocutory order toll the 30-day deadline for filing a notice of appeal? In this particular case, a notice of appeal was filed 10 weeks after the court entered its suppression ruling, following three continuances requested and obtained by the state in Mr. Marker's case. The first thing I'd like to say is that the state has mischaracterized this notion that a ruling on a motion to reconsider is substantively appealable, that it makes some kind of a substantive decision in the case, because the case law is clear that that is not correct. On page nine of my brief, I cite to Sears and Crane, those cases hold that the denial of post-judgment motions, as well as the denial of interlocutory orders, are not, not in and of themselves judgments or appealable orders. And therefore, the denial of the motion for reconsideration has no substantive effect. It's the order that's initially entered in this case on August 11th of 06. That's the order that suppresses the evidence. The order denying reconsideration does not independently suppress the evidence. That would mean a motion for reconsideration would never extend the time, is that correct? For interlocutory orders in criminal cases. In any motion to suppress case, right, which are always interlocutory orders, the motion to reconsider would not hold the time under the appellate court decision, correct? Mr. Wecker, the practicalities of going your way in this case, it really presents a choice for the state to, in most cases, to file either a notice of appeal or a motion to reconsider, right? See, I take issue with that, Your Honor. I really do. First of all, if you'll recall, I was here last week in the Klepper case. Not exactly the same situation, but again, another type of interlocutory order. The irony is, in that case, the trial just ruled on the motion to reconsider within 30 days. At that point in time, all the state had to do was walk across the corridor and file its notice of appeal. I mean, a simpler act for a lawyer filling out, filling in the blanks of the notice is kind of hard to imagine. So even in those cases, and some of the cases that the, excuse me, the appellate court overruled, were situations where the trial judge had, in fact, denied reconsideration within 30 days. And I just We don't have to stretch too far. You would admit that in some cases that the motion to reconsider might not be considered within 30 days. I think those would be extreme and rare cases, Your Honor, because, as I said last week, when you're an attorney litigating an issue like this, whether for the state or the defense, you walk into that courtroom and you're prepared. You're prepared with your witnesses, with your memo, if you need one, with your research. Once the trial judge rules, how much more is there typically to do in a case of this nature? How much can you be taken by surprise? And I recall that argument last time. So you really don't take issue with the fact that there should be opportunity for motions to reconsider, given the misguided effort in interpreting the law. So you don't take issue with that at all. So this discussion about pretrial custody and what have you is really not the heart of your issue. You think the motion to reconsider can be decided and you can have your notice of appeal within the 30 days. Easily. And certainly the practice in civil cases is similar, if not more restrictive, because of the shortened deadlines for filing appeals from interlocutory orders. In injunction cases, I think the deadline is two days in some circumstances. And I would venture to say that in most civil cases of any complexity, the complications, the legal issues, are much more complex than they are in criminal cases. These issues tend to be very rote and routine after a while. And it just seems to me that you lose a motion of this nature if you're the state. You go back to your office, maybe you need to do some research. Typically not, because you've already done it. It's really not that difficult to draw a motion for reconsideration in very short order and to file it. And I think this court would have to assume that trial judges are going to ignore their duty, knowing this 30-day deadline, in order to rule that a lot more time is really needed in this situation. I don't think trial judges are going to do that. And I don't think it's that difficult to get a case before the court within 30 days and to get a ruling. So, and here's the other problem with that situation. Absent some kind of a deadline, the trial judges are going to ignore their duty. The restriction on filing a notice of appeal can go on for quite a lengthy period of time. And as the majority says below, that can keep a defendant in custody, that can keep him held to bail, while months go by until this matter is resolved. I mean, absent a rule of this court, what's going to happen? You can take your 30 days to just file your motion for reconsideration. You can then go into the courtroom and say, Judge, I need a continuance. He says, okay, fine. You come back in another few weeks or a month, and you say, you know, Judge, I've been really busy, and I know you've been busy, too. We need another continuance. Okay, fine. What is the deadline now for doing this? And the practical result would be that in interlocutory cases, the deadline for filing a notice of appeal suddenly is much longer or open-ended as compared to filing the notice in cases where there's a final judgment. And that's where the demand stops that, exactly. Yeah, I addressed that in the brief, and I would say in response that that's not a complete answer to this problem. Because at the same time that there may be a motion to suppress or a motion to reconsider a motion to suppress that's pending, there may be other issues that are pending for the defense. I mean, it's not uncommon for the defense to have other motions on file. If those are considered to be in part the cause of continuances in the case, then that time is going to be attributable to the defense. So it's really not an answer to this problem to say, oh, well, the speedy trial statute protects you. It really doesn't. What if the defense has other motions on file? What if for other reasons they don't demand an immediate trial? I mean, the statute now says you've got to demand an immediate trial if you don't want that time attributed to you. What if they're not ready for the trial, but they were fully prepared for the suppression hearing? So I take serious issue with that comment. And I think we need to remember, too, again, in response to a comment made by the state, it's not findings. It's not findings that are appealable under any type of appeal. It's orders and judgments. So the fact that the trial judge crosses more Ts or dots different Is the second time when he determines a motion to reconsider does not mean that the judgment has been modified and certainly has not been reversed. The decision is the same at the conclusion of the suppression hearing and at the conclusion of the hearing to deny reconsideration. So that argument is not well taken either. Counselor, the state argues that a contrary reading or your reading would contradict the rules plain language, first of all, in long-standing history. Clearly there's a long-standing history of interpreting the rule the way the state would have us do it. Do you agree with that? Yes. Do you agree the plain language of the statute would favor the state? Quite the opposite. Do you think it's ambiguous? No, I do not. Certainly not. Do you think that this court should engage in an analysis that includes what is the intent, as we do with legislation? I don't think that's necessarily out of order, but I would say a couple of things. Number one, it's clear from the language of the statute, unless you do some horrible contortions with the English language, that the first sentence of Rule 606, B, pertains to post-judgment motions. And that's the only circumstance under which you can toll the time for filing the notice of appeal. It's also clear that the next to the last sentence in that subsection speaks to interlocutory orders. So I don't see where there's ambiguity. I don't see how the state can, with a straight face, indicate that there's something that's not clear about that first sentence. Clearly it talks in terms of final judgments, and if you want to appeal from that judgment, you can toll the time period if you file the motion to reconsider. Now, if the court would find that the rule is ambiguous in some respect, the other thing that I addressed in the brief was that there's a considerable historical background to this rule and to the practice of the courts going back quite a few years. The history of this rule is that until 1970, defendants could only appeal from final judgments in criminal cases. And the state could only appeal from interlocutory orders. And at that point in time, there was only one tolling provision, which was that defendants, again, if they're filing motions directed at the judgment, can get additional time to file their notice of appeal. So my point is that in the mid-60s, when we were all young, everyone would have understood the practice in the court that the only one way to toll that notice of appeal deadline, which is for defendants in criminal cases, after they've been convicted and sentenced, to file a motion. And the rule is amended a number of times after that. If it wasn't clear then, it's certainly absolutely clear now that that's the case. And what the court is trying to do in the rule is to distinguish between situations, the same historical situations, where you only get 30 days to appeal an interlocutory order, period, versus you can get some additional time if you're attacking the judgment. There's no requirement, of course, that the criminal rules be consistent with the civil rules. But it's interesting to compare them, because I think there's an effort that's been made in these rules to make them consistent. In civil cases, the same rule applies, with almost exactly the same language, that in interlocutory appeals, the filing of a motion to reconsider does not toll the time for appeal, period, under any circumstance. But when you have final judgments in civil cases, if you file your motion to reconsider in a timely way, you get additional time. So I think it's clear that that's what the rules are designed to accomplish. And it makes no sense to have a different rule in criminal cases for interlocutory orders. And I agree completely with Justice Freeman when he says, you know, as a practical matter, how many judges overturn their rulings, especially on suppression issues? Is there any merit to the threat of the State's argument that the fact that this has been historically the way the rule has been interpreted and this Court has not acted, either by taking a case or by amending the rule, is there anything that we should take into consideration? Well, by not taking a case means nothing. I mean, the denial of the petition for leap to appeal means nothing. It has no significance whatsoever, other than the fact the Court just didn't want to hear the case. Yes, there have been cases over the past 30 years saying you do get more time, that you do get a tolling rule in this situation. But what the appellate court found, and what I've always argued in this case, is those decisions were decided in case, and correctly, every single one of them, every single one of them ultimately relies on a decision in a civil case, in the Childress case, where the appellate court says we have this civil rule with respect to final judgment and tolling the time period by filing a motion to reconsider in a civil case involving a final judgment. And then they just say, obviously, that applies in this criminal case, in an interlocutory appeal. And there's no analysis of what's going on. And after Childress, everybody just cites Childress or cites the next case down the line to say, well, this is obviously the rule. And in the appellate court majority opinion, they quite correctly say what happened in those cases was a complete absence of legal evidence. There was no analysis. It wasn't that they looked at the rule and said, well, this is what it means. They just looked at Childress and said, oh, well, there's already a holding here. And what's interesting is the dissent, even Justice Callum in the dissent in this case, does not make any effort whatsoever to defend the Childress or other cases on the merits. He very frankly concedes that it's not defensible. And he says words to this effect, there is no valid precedent, either civil or criminal, for a tolling rule with respect to interlocutory orders. None. So, yes, there are cases out there, but I hope it's not too forward to say they're just decided incorrectly. And that's why, and this issue apparently was never raised earlier. Notwithstanding what else has transpired up until this point in time, does this court at this time, does it not have the authority to say, this is what the rule means, no matter what, how it's been interpreted by other courts in the past? You mean to contradict the previous rulings? There have been no rulings by this court, is that correct? On this issue, correct. I'm not sure of your question. The question is, notwithstanding what all of the arguments the State has made and you have made, does this court at this point in time have the authority simply to say, this is what the rule means. It means there's time, the motion for reconsideration tolls the time for filing a notice of appeal from an order to grant a motion to suppress. But on what principle, Your Honor, what rule of law, what statute, what rule of this court would that decision be made? Do we have the power to change rules, to make rules? I guess my question is, do we have the authority to interpret the rules and what our intent was that this rule was promulgated? Well, I think that's always the case. The court has the authority to interpret the rules, but the question to me as an attorney is, what is the principle on which that decision would be made? If the rule is unambiguous, if there's any ambiguity involved, there's clearly a long history as to why the court should rule the other way, rule the majority way in marker. On what basis are we going to do this? You know, the State raises this bugbear about all these prior cases are going to be overturned. And the dissent talks about this at great length. All these cases are going to be overturned, 20, 30 years old, with people who have been incarcerated and can file post-conviction petitions. You know, I just don't see that, Your Honor. Once a court says, we have jurisdiction, and they decide a case, I don't think you can come back 10 years later, 20 years later, whatever it is, and say the court really didn't have jurisdiction. That's different from saying there's a void order involved in this case. Jurisdiction is different. Once a court says, we've got it, we're going to decide a case, that's it. The case is decided. Thank you very much. The defendant doesn't have a response to the State's plain language argument, which is that by including post-trial motions, as well as post-sentencing motions, in the category of motions that are directed against the judgment, the rule necessarily uses that phrase to refer to more than just final judgments because a post-trial motion is never directed at a final judgment. There hasn't been a sentence imposed, so there is no final judgment. In response to Justice Carmier's question about whether this court can say what the rule means, of course it can. The court could clarify it, interpret it, say what it has meant all along. The court could even change the rule, can do it in an opinion under Rule 305. The defendant made the point that findings are not appealable. That's correct. Only the judgment is appealable. Only the suppression of the evidence is appealable. What I meant in pointing out that the court made additional findings on reconsideration was to make it clear that reconsideration was not just a pro forma step that happened in this case. The court really did relook at the ruling, and that's clear from the fact that the court made those additional findings. The defendant made the point that all of the cases rely ultimately on Childress. That's not true. Each of those cases relies on Rule 606 itself. So to say there's no valid precedent for the tolling rule is wrong. There might not be cases, but the rule itself is the precedent. Each of those cases interpreted the language of the rule. Just because they didn't explicitly parse the language in the opinion doesn't make that any different. The defendant also made the point that the denial of reconsideration is itself not appealable. There are no cases in the defendant's brief that support that position. The defendant cites the Sears case. That was a civil case, not a criminal case, and it was not the denial of reconsideration of an interlocutory ruling. It was the denial of reconsideration of a post-judgment ruling. For the state's position that the denial of reconsideration of a suppression ruling is appealable, there are the cases of Van Matre, Rimmer, and Stokes. In response to the question about the practicalities of the rule that the defendant urges, what would happen is that the state would just stop seeking reconsideration. It would just be too dangerous to lose any opportunity to correct the ruling on appeal. So the state would have to file more appeals of suppression rulings, more suppression appeals would clog the appellate court, and the ultimate effect would be that it would take longer to resolve criminal cases. The defendant said something to the effect of, Rule 606 somehow functions as a timeline on the trial court's ruling on a motion for reconsideration. There's nothing in the rule that suggests that it is intended to micromanage the trial court's management of its own docket. That interpretation is incorrect. The court should be allowed to rule on motions on its own schedule as it sees fit. The defendant also made a comment about delay, but this type of case is no different than any other pretrial motion. If pretrial delay is caused in part by the defendant, there is no speedy trial problem. If what the defendant is really getting at is that the appeal by the state is somehow unfair to the defendant, that question has already been resolved. The policy behind 604 and decisions like Young is that yes, a state appeal does cause some delay, which could be a hardship for the defendant, but the appeal is so important that the delay is necessary. The public has an interest in ensuring that the allegations, the criminal allegations are accurately determined and state appeals are necessary to further that interest. Finally, the defendant makes a comparison to the way the rule works in civil cases. That comparison is unhelpful because for one thing, the rules governing interlocutory appeals in civil and criminal cases are worded differently. For another thing, civil cases are different in that the party who is aggrieved by the interlocutory order ordinarily has two chances to challenge that order. They can take an interlocutory appeal, they can wait for the entry of the final judgment and appeal from that, and that appeal will always bring up all of the underlying orders entered throughout the case. In the case of a state appeal of a suppression ruling, the state only has one chance to take the appeal. They have to take it pretrial. They can't take it at the end because there's a double jeopardy problem. So there's only one chance to correct the error here. So that's one way in which civil and criminal interlocutory appeals are different. And then, of course, there is the fact that the consequences in a criminal case are much more severe. There's consequences for the development of the body of law in general, and then there's the public's interest in ensuring that the finder of fact determines the truth of the allegations accurately. The defendant also suggested that a tolling rule would make the appeal deadline somehow open-ended. That's not true. The appeal deadline would be the same. It would be 30 days from the entry of the order suppressing evidence or 30 days from the denial of reconsideration of that order. Finally, the defendant made a point about the history of the rule, but the only version of the rule that's relevant here is the one that's been in effect for the last 30 years. And the history of that rule is that it has been consistently interpreted to allow for tolling. Unless the Court has further questions, I'd ask the Court to reverse the judgment. Thank you.